**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.

CHARLES WILLIAM MCHAN; MARTHA
BEAVERS MCHAN; SAMUEL RAY
MCHAN, personal representative of
JOHN DAVIS MCHAN,
          *Defendants-Appellants.*

No. 01-2060

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.

CHARLES WILLIAM MCHAN; MARTHA
BEAVERS MCHAN; SAMUEL RAY
MCHAN, personal representative of
John Davis McHan,
          *Defendants-Appellants.*

No. 02-2067

UNITED STATES OF AMERICA,
          *Plaintiff-Appellant,*

v.

CHARLES WILLIAM MCHAN; MARTHA
BEAVERS MCHAN; SAMUEL RAY
MCHAN, personal representative of
John Davis McHan,
          *Defendants-Appellees.*

No. 02-2090

Appeals from the United States District Court
for the Western District of North Carolina, at Bryson City.
Richard L. Voorhees, District Judge.
(CR-90-41-V)

Argued: June 3, 2003

Decided: September 29, 2003

Before WIDENER, NIEMEYER, and LUTTIG, Circuit Judges.

---

Affirmed in part, reversed in part and remanded by published opinion. Judge Niemeyer wrote the opinion, in which Judge Widener joined. Judge Luttig wrote an opinion concurring in part and concurring in the judgment in part.

---

**COUNSEL**

**ARGUED:** David Benjamin Smith, ENGLISH & SMITH, Alexandria, Virginia, for Appellants. Thomas Richard Ascik, Assistant United States Attorney, Asheville, North Carolina, for Appellee. **ON BRIEF:** Robert J. Conrad, Jr., United States Attorney, Asheville, North Carolina, for Appellee.

---

**OPINION**

NIEMEYER, Circuit Judge:

Following the conviction of Charles McHan, Sr. for drug-trafficking and related offenses, the district court determined, pursuant to 21 U.S.C. § 853(a), that McHan was required to forfeit to the United States approximately $1.5 million in proceeds obtained as a result of his criminal conduct. When McHan could not account for the whereabouts of these proceeds, the court entered, as part of McHan's sentence, a preliminary order forfeiting "substitute property" of

McHan in the form of real estate and other assets, pursuant to 21 U.S.C. § 853(p).

McHan's wife, Martha, and his two sons, John and Charles Jr., (the petitioners herein) filed a petition in Charles McHan, Sr.'s sentencing proceedings pursuant to 21 U.S.C. § 853(n), asserting an interest in much of the property listed in the preliminary order of forfeiture. After a hearing on their petition, the district court amended the preliminary order of forfeiture to release some of the substitute property and issued a final order of forfeiture with respect to the remainder.

On their appeal, Martha, John, and Charles Jr. contend (1) that under the Due Process Clause they were entitled to be heard *before* the district court issued the preliminary order of forfeiture; (2) that the relation-back principle of § 853(c), which provides that a criminal forfeiture relates back to include property owned by the defendant at the time of the commission of the act giving rise to forfeiture, does not apply to the forfeiture of substitute property; and (3) that the district court violated the Seventh Amendment by denying their request to have the hearing of their petition conducted before a jury. They also make several challenges to determinations specific to assets that were not released from the forfeiture order. On cross-appeal, the United States contends that the district court erred in releasing certain assets from the forfeiture order.

For the reasons that follow, we affirm in part, reverse in part, and remand.

I

Charles McHan, Sr. ("Charles Sr.") was charged in a seventeen-count indictment with drug trafficking in western North Carolina between November 1984 and November 1986. Specifically, the indictment charged Charles Sr. with, among other things, a conspiracy to distribute and to possess with intent to distribute over 50 kilograms of marijuana, in violation of 21 U.S.C. §§ 841 and 846; tax evasion; and engaging in a continuing criminal enterprise with regard to marijuana distribution. Count Seventeen alleged that Charles Sr.'s interest in property enumerated both in the indictment and in several appendices incorporated therein by reference was subject to forfeiture under

21 U.S.C. § 853, a statute authorizing the *in personam* criminal forfeiture of property used in connection with illegal drug activities.

After pleading guilty to Counts 2-7 of the indictment, Charles Sr. was tried by a jury and convicted on Counts 1 and 8-16. Thereafter, he waived a jury trial on Count 17, the forfeiture count. Following a bench trial, the district court found that Charles Sr. received proceeds in the amount of $1,489,350 as a result of illegal marijuana sales, and, after deducting Charles Sr.'s expenses incurred to obtain those proceeds and a co-conspirator's share of the proceeds, the court ordered forfeiture to the United States of $395,670. On appeal, we affirmed Charles Sr.'s convictions but ruled, with respect to the forfeiture, that the district court should have forfeited the gross proceeds, not the net profits, from the illegal activities. *United States v. McHan*, 101 F.3d 1027 (4th Cir. 1996).

On remand, the government moved for a preliminary order of forfeiture of *substitute* property because Charles Sr. had "refused to give credible information concerning the disposition" of the $1,489,350. The district court granted the government's motion, "subject to any third-party interests therein." Charles Sr. and the three petitioners then objected to the preliminary order of forfeiture, arguing that most of the substitute property in fact belonged to Martha, Charles Jr., and John because Charles Sr. had conveyed the property to them. The district court ruled that this objection was out of order because the petitioners' interests were adequately protected by 21 U.S.C. § 853(n). Martha, Charles Jr., and John then filed a petition under § 853(n) for a "Hearing to Adjudicate the Validity of [Their] Interest in Property Preliminarily Ordered Forfeited." In their petition, the petitioners argued (1) that a forfeiture of substitute property does not "relate back" to include property owned by the defendant at the time of the commission of the offense giving rise to forfeiture; (2) that much of the property was actually vested in Martha at the time of Charles Sr.'s criminal conduct pursuant to a 1981 written agreement between Martha and Charles Sr. ("the 1981 Agreement"); and (3) that, in any event, the petitioners obtained title to the property as bona fide purchasers for value by virtue of a series of three agreements entered into between Charles Sr. and Martha, dated July 1, 1988. The petitioners also requested that a jury find the facts on their petition.

The district court denied the petitioners' request for a jury and conducted a hearing, taking testimony from several witnesses. Following the hearing, the court concluded (1) that the substitute property eligible for forfeiture related back to include property owned by Charles Sr. at the time of the criminal acts giving rise to the forfeiture; (2) that Martha failed to prove by a preponderance of the evidence that the 1981 Agreement "provided her with a vested property interest that was superior to [Charles Sr.'s] at the time of the acts which gave rise to the forfeiture of [Charles Sr.'s] property" under § 853(n)(6)(A); and (3) that the transfers of property to the petitioners pursuant to the agreements dated July 1, 1988 were not arm's-length transactions and thus petitioners were not bona fide purchasers for value entitled to the property under § 853(n)(6)(B). The district court also made several specific rulings as to particular property sought to be forfeited. Following modifications to its decision made in response to the parties' motions for reconsideration, the court entered a final order of forfeiture on September 10, 2002.

The petitioners appeal from the final order of forfeiture, contending (1) that the district court erred in denying them an opportunity to be heard *prior* to the issuance of the preliminary order of forfeiture; (2) that forfeiture of substitute property does not relate back to the time of the commission of the acts that gave rise to forfeiture; and (3) that they were entitled to have a jury find the facts at the hearing on their petition to determine the validity of their interests in the property. In addition, the petitioners make several challenges to determinations made with respect to the forfeitability of specific assets. On cross-appeal, the government likewise challenges rulings on the forfeitability of several specific assets.

II

The criminal forfeiture statute at issue in this case, 21 U.S.C. § 853, was enacted by Congress as part of the Criminal Forfeiture Act of 1984, an amendment to the Comprehensive Drug Abuse Prevention and Control Act of 1970. *See* Pub. L. 98-473, § 303, 98 Stat. 2044. Prior to the enactment of § 853, criminal forfeiture had to be obtained under either the Racketeer Influenced and Corrupt Organizations (RICO) statute, 18 U.S.C. § 1961 *et seq.*, or the Continuing Criminal Enterprise (CCE) statute, 21 U.S.C. § 848. S. Rep. No. 98-225, at 193

(1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3376. There was no specific criminal forfeiture statute for drug trafficking. In practice, prosecutors seeking forfeiture of drug-trafficking assets relied primarily on an *in rem* civil forfeiture procedure, which Congress found particularly inefficient because the civil forfeiture procedure required the government to file separate suits in every judicial district in which the criminal defendant's property was located. *Id.* at 196-97, *reprinted in* 1984 U.S.C.C.A.N. at 3379-80. Moreover, even when the criminal forfeiture provisions of the RICO and CCE statutes were applicable, they did not provide means by which the government could forfeit property that a criminal defendant disposed of in anticipation of the criminal proceedings. *Id.* at 195, *reprinted in* 1984 U.S.C.C.A.N. at 3378. Thus, when Congress enacted the Criminal Forfeiture Act of 1984, it both amended RICO's criminal forfeiture procedure to address its deficiencies and created 21 U.S.C. § 853, which "is, in nearly all respects, identical to the RICO criminal forfeiture statute as amended," but "applicable in all felony drug cases." *Id.* at 209, 198, *reprinted in* 1984 U.S.C.C.A.N. at 3392, 3381.

Section 853(a) provides that "[a]ny person convicted of a violation of this subchapter [Control and Enforcement] or subchapter II [Import and Export] of this chapter [Drug Abuse Prevention and Control] . . . shall forfeit to the United States":

> (1)  any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation;

> (2)  any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation; and

> (3)  in the case of a person convicted of engaging in a continuing criminal enterprise in violation of section 848 of this title, the person shall forfeit, in addition to any property described in paragraph (1) or (2), any of his interest in, claims against, and property or contractual rights affording a source of control over, the continuing criminal enterprise.

The forfeiture of such property is effected — vesting the property's title in the United States — "upon the commission of the act giving

rise to forfeiture under this section." 21 U.S.C. § 853(c). This "relation back" principle in § 853(c) "prevent[s] defendants from escaping the impact of forfeiture by transferring assets to third parties." *United States v. Reckmeyer*, 836 F.2d 200, 203 (4th Cir. 1987).

Section 853(d) creates a rebuttable presumption that any property of a person convicted of a felony drug offense is subject to forfeiture if the government establishes by a preponderance of the evidence that (1) such property was acquired by the defendant during the time period of the violation or a reasonable time thereafter and (2) there was no likely source for the property other than the violation. If any of the forfeitable property cannot be located by the government, has been transferred or sold to a third party, is beyond the court's jurisdiction, or has been diminished in value or commingled beyond easy divisibility, the court must, pursuant to § 853(p), order the forfeiture of "substitute property" of the defendant up to the value of the forfeitable property.

To protect the property interests of third parties, § 853(n) provides a process for the vindication of those interests. After entry of a forfeiture order, the United States is required to "publish notice of the order and of its intent to dispose of the property" (and it also may directly contact those it knows to have alleged an interest in the property). 21 U.S.C. § 853(n)(1). Within 30 days of receiving notice, "[a]ny person, other than the defendant, asserting a legal interest" in the property may "petition the court for a hearing to adjudicate the validity of his alleged interest in the property." *Id.* § 853(n)(2). The petition must be signed by the petitioner and must set forth the nature and extent of the petitioner's property interest. *Id.* § 853(n)(3). "[T]o the extent practicable and consistent with the interests of justice," the court is directed to hold a hearing "within thirty days of the filing of the petition." *Id.* § 853(n)(4). At the hearing, the petitioners and the government may present witnesses and other evidence and may cross-examine the witnesses. *Id.* § 853(n)(5). Finally, if, after the hearing, "the court determines that the petitioner has established by a preponderance of the evidence" that (1) he had a vested interest in the property or an interest superior to that of the defendant at the time of the commission of the acts giving rise to forfeiture, or (2) he was a "bona fide purchaser for value" of the property "and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture,"

the court is directed to "amend the order of forfeiture in accordance with its determination." *Id.* § 853(n)(6). Following the court's disposition of all petitions filed by third parties, the order of forfeiture, as amended as a result of the disposition of all petitions, gives the United States "clear title to property that is the subject of the order of forfeiture." *Id.* § 853(n)(7).

The petition authorized by § 853(n) is the exclusive avenue through which a third party may protect his interest in property that has been subject to a forfeiture order. Section 853(k) prohibits any person "claiming an interest in property subject to forfeiture" from (1) intervening in the trial or appeal of a criminal case involving forfeiture of such property or (2) commencing an action at law or equity against the United States concerning the validity of the third party's alleged interest in the property.

This is the statutory scheme that the petitioners in this case challenge in several respects.

III

For their first assignment of error, the petitioners contend that they should have been given an opportunity to oppose the government's motion for the preliminary order of forfeiture and the evidentiary basis thereof. They argue that the Due Process Clause of the Fifth Amendment "required that they receive *notice* of the government's motion seeking the entry of the [preliminary order of forfeiture] and an *opportunity to be heard* before — or at least soon after — the entry of a [preliminary order of forfeiture] that would seriously impair their property rights." They assert that if they were given an opportunity to oppose the government's motion for a preliminary order of forfeiture, they could have "pointed out that many of the properties listed in the Order [of forfeiture] were not owned at all or not wholly owned by Charles, Sr. at the time of his arrest or subsequent thereto."

The petitioners' argument misconstrues the nature of the forfeiture proceeding and their appropriate role in it. The petitioners were not defendants in the criminal trial; Charles McHan, Sr. was the defendant, and it was he who forfeited his property under 21 U.S.C. § 853. Of course, Charles Sr. had the opportunity at trial to oppose forfeiture

before the preliminary order of forfeiture was entered as part of his sentence. *See* 21 U.S.C. § 853(a); *Libretti v. United States*, 516 U.S. 29, 39 (1995) (holding that § 853 is a sentencing statute, applied "following conviction . . . as punishment for the commission of various drug . . . crimes" and noting that § 853 imposes forfeiture "in addition to any other *sentence*") (emphasis in original). But the statute provides that, until this sentence of forfeiture is entered, no party claiming an interest in the forfeited property may intervene in the criminal case. *See* 21 U.S.C. § 853(k); *see also Libretti*, 516 U.S. at 44 (reaffirming that a § 853(n) proceeding is the "only . . . means" by which a third party may safeguard his rights in property ordered forfeited under § 853, even where the complaint is that the forfeiture itself was unsupported by factual evidence). Only *after* the sentence is entered by an order of forfeiture and notice is given to the public may any person assert an interest in forfeited property by filing a petition pursuant to § 853(n). *See* 21 U.S.C. § 853(n). Then after the petitions of third parties are resolved, a final order of forfeiture is entered. *See id.* § 853(n)(6), (7).

Because the district court followed this procedure, the petitioners' challenge under the Due Process Clause must be a challenge to the statutory scheme. In essence, the petitioners are arguing that due process required that they, as third parties, be given an opportunity to interject themselves into the sentencing phase of the criminal case against Charles Sr. because his sentence had the *potential* to affect their property interests. But they have no support for the proposition. *See Libretti*, 516 U.S. 29; *United States v. Reckmeyer*, 836 F.2d at 203. In *Libretti*, the Supreme Court rejected the defendant's argument that a § 853(n) proceeding inadequately protected third parties' interests. The Court emphasized that "Congress has determined that § 853(n) . . . provides the means by which third-party rights must be vindicated." 516 U.S. at 44. And in *Reckmeyer*, while we acknowledged that "serious due process concerns would be raised . . . if third parties asserting an interest in forfeited assets were barred from challenging the validity of the forfeiture," 836 F.2d at 206, we went on to hold that § 853(n) is "a means by which third persons who raise challenges to the validity of the forfeiture order could have their claims adjudicated," *id.* at 208; *see also id.* at 207 (reading § 853(n) to allow challenges to the validity of the forfeiture to avoid any "possible constitutional infirmity"). As we noted, Congress was particu-

larly aware that, unlike in a civil forfeiture case where "all parties with an interest in [the] civilly forfeitable property may participate in judicial forfeiture proceedings," "third parties with interests in criminally forfeitable property may not participate in the criminal trial." *Id.* at 207 (quoting S. Rep. No. 98-225, at 207-08, *reprinted in* 1984 U.S.C.C.A.N. at 3390-91 ("discussing 18 U.S.C. § 1963(l), a provision of the RICO statute that is identical to § 853(n)")). We concluded that it was Congress' clear intention in passing § 853(n) that third parties have an opportunity to be heard and to be awarded relief if they were to show a cognizable interest in the property preliminarily ordered forfeited. *Id.* at 208.

The Supreme Court's rejection in *Libretti* of challenges similar to those made by petitioners in this case and our holding in *Reckmeyer* require us to reject petitioners' claims that the statutory scheme denies them due process. Indeed, § 853(n) provides all of the process due. It requires that the petitioners receive notice of the order of forfeiture before its final implementation; that they be given a hearing; that they be allowed to present witnesses and evidence; and that they be permitted to cross-examine any witnesses who appear at the hearing. Due process does not require more. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner") (internal quotation marks omitted).

IV

The petitioners also contend that the district court erred in construing the forfeiture statute to provide that the forfeiture of "substitute property" under 21 U.S.C. § 853(p) "relates back" to the time of the commission of the acts giving rise to the forfeiture. They assert that the relation-back principle of § 853(c) applies only to the "tainted" property described in § 853(a) and not to "innocent" substitute property described in § 853(p). Based on this argument, they state that, when asserting a forfeiture interest in substitute property, the government can look only to property owned by Charles Sr. "at the time the criminal forfeiture judgment [was] entered," rather than at the time of the commission of the act giving rise to the forfeiture.

To support their position, the petitioners advance two arguments. First, they contend that § 853(c) "expressly" limits the relation-back

principle to the "tainted assets" described in § 853(a). Second, they contend that as a matter of policy, if the relation-back principle applied to substitute property, "innocent transferees of substitute assets [would] have no way to protect themselves from the government's unforeseeable future legal claim to the substitute assets." As an alternative to their argument that the relation-back principle should be limited to the date of the criminal forfeiture judgment when substitute property is forfeited, they argue that "common sense and sound policy reasons dictate that the forfeiture should relate back no further than the date of the indictment." In suggesting this alternative date, the petitioners place great weight on a Department of Justice legislative proposal that recognized the ambiguity surrounding the applicability of the § 853(c) relation-back principle to substitute property and that recommended an amendment to the statute providing that substitute asset forfeitures relate back to the date of the indictment.

To address the petitioners' first argument, we note that the express language of § 853(c), contrary to what the petitioners claim, does not preclude the application of the relation-back principle to substitute property. Section 853(c) states that "[a]ll right, title, and interest in property described in subsection (a) of this section vests in the United States upon the commission of the act giving rise to forfeiture under this section." 21 U.S.C. § 853(c). While it is clear that all the property described in § 853(a) — property tainted by its relationship to criminal conduct — is forfeited to the United States at the time of the criminal conduct giving rise to forfeiture, this does not preclude application of the relation-back principle to substitute property. Indeed, the language of § 853(p) suggests otherwise, stating, "If any of the [tainted] property *described in subsection (a)* of this section . . . [has been placed beyond the reach of a forfeiture] . . . the court shall order the forfeiture of any other property of the defendant up to the value of [the tainted] property" that is unavailable for forfeiture. *Id.* § 853(p). This section thus seems to equate substitute property with tainted property when the tainted property has been placed beyond the reach of a forfeiture in that it (1) cannot be located, (2) has been transferred to a third party, (3) has been placed beyond the jurisdiction of the court, (4) has been substantially diminished in value, or (5) has been commingled with other property so that it cannot be divided without difficulty. *See id.*

But any doubt about this construction should be eliminated by the statutory instruction to construe the statute liberally "to effectuate its remedial purposes." 21 U.S.C. § 853(o). The remedial purpose of both the relation-back provision and the substitute property provision is to thwart the defendant's efforts to avoid the impact of a criminal forfeiture.

When Congress enacted 21 U.S.C. § 853 as part of the Criminal Forfeiture Act of 1984, it included the substitute asset provision to "address[ ] one of the most serious impediments to significant criminal forfeitures," i.e., that "a defendant may succeed in avoiding the forfeiture sanction simply by transferring his assets to another, placing them beyond the jurisdiction of the court, or taking other actions to render his forfeitable property unavailable at the time of conviction." S. Rep. No. 98-225, at 201, 212, *reprinted in* 1984 U.S.C.C.A.N. at 3384, 3395 (discussing the shared purpose of the substitute property provisions of 21 U.S.C. § 853 and 18 U.S.C. § 1963 (the analogous RICO statute)). Describing this problem in substantial detail, Congress noted:

> Unlike civil forfeitures, in which the government's seizure of the asset occurs at or soon after the commencement of the forfeiture action, in criminal forfeitures, the assets generally remain in the custody of the defendant until the time of his conviction for the offense upon which the forfeiture is based. Only after conviction does the government seize the asset. Thus, a person who anticipates that some of his property may be subject to criminal forfeiture has not only an obvious incentive, but also ample opportunity, to transfer his assets or remove them from the jurisdiction of the court prior to trial and so shield them from any possibility of forfeiture. . . . The important economic impact of imposing the sanction of forfeiture against the defendant is thus lost.

*Id.* at 195, *reprinted in* 1984 U.S.C.C.A.N. at 3378. It is thus apparent that the remedial purpose of § 853 generally and § 853(p) in particular was to thwart efforts by a defendant to circumvent the economic impact of an anticipated criminal forfeiture sentence.

Given that the purpose of the relation-back provision in § 853(c) was to "prevent defendants from escaping the impact of forfeiture by

transferring assets to third parties," *Reckmeyer*, 836 F.2d at 203, and the purpose of § 853(p) was similarly to address this very "impediment[ ] to significant criminal forfeitures," S. Rep. No. 98-225, at 201, *reprinted in* 1984 U.S.C.C.A.N. at 3384, the substitute property that is subject to forfeiture under § 853(p) must be read to include all property of the defendant at the time of the commission of the acts giving rise to the forfeiture. *See United States v. Phillips*, 185 F.3d 183, 188 (4th Cir. 1999) (holding that all right, title, and interest in the substitute property that the defendant transferred to a third party on the eve of conviction "vested in the United States upon the commission of the act giving rise to the forfeiture" (citing 21 U.S.C. § 853(c))); *In re Billman*, 915 F.2d 916, 921 (4th Cir. 1990) (interpreting the analogous RICO criminal forfeiture statute and holding that "a defendant [cannot] thwart the operation of forfeiture laws by absconding with RICO proceeds and then transferring his substitute assets to a third person who does not qualify as a bona fide purchaser for value"). To conclude otherwise would invite defendants who anticipate conviction for their unlawful drug-trafficking activities to undertake the obvious step of transferring their assets or removing them from the court's reach prior to indictment and conviction, thereby circumventing the important economic impact of forfeiture.

In support of their position, the petitioners make the policy argument that our interpretation would leave innocent transferees of substitute assets with "no way to protect themselves from the government's unforeseeable future legal claim to the substitute assets." But this argument fails to take into account the provisions of the statute that explicitly protect innocent transferees. A bona fide purchaser for value of the defendant's property who was at the time of transfer "reasonably without cause to believe that the [defendant's] property was subject to forfeiture," 21 U.S.C. § 853(n)(6)(B), is given the right to file a § 853(n) petition to have such substitute property removed from the forfeiture order, *id.* § 853(n)(2) (allowing any person asserting a legal interest in property forfeited "pursuant to this section" to file a petition).

Accordingly, we conclude that the forfeiture of substitute property pursuant to 21 U.S.C. § 853(p) relates back to the date of the acts giving rise to the forfeiture under 21 U.S.C. § 853.

V

The petitioners next contend that their third-party petition filed under 21 U.S.C. § 853(n) in the criminal forfeiture judgment in this case initiated a proceeding to which the Seventh Amendment right to jury trial attaches. Therefore, they contend that the district court erred in denying their request for a jury trial. Because the statute itself provides that the hearing on the petitioners' petition "shall be held before the court alone, without a jury," 21 U.S.C. § 853(n)(2), the petitioners, in making this argument, are challenging the constitutionality of the statutory requirement that the hearing be conducted by the court without a jury.

The Seventh Amendment provides:

> In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law.

U.S. Const. amend. VII. The phrase "Suits at common law" has "been construed to refer to cases tried prior to the adoption of the Seventh Amendment in courts of law in which jury trial was customary as distinguished from courts of equity or admiralty in which jury trial was not." *Atlas Roofing Co. v. Occupational Safety & Health Rev. Comm'n*, 430 U.S. 442, 449 (1977). Accordingly, both parties agree that the Seventh Amendment right to jury trial exists only for actions of the sort enforced at common law when the Bill of Rights was ratified in 1791. *See Curtis v. Loether*, 415 U.S. 189, 193 (1974); *see also* 8 James Wm. Moore *et al.*, Moore's Fed. Practice ¶ 38.10[2][b] (3d ed. 2003) ("If the issue, in its modern context, is such that it would have been heard at common law in 1791, then it is triable by a jury as of right, and that right is constitutionally protected").

In considering whether a jury trial must be provided in a proceeding created by statute, "the question comes down to whether, where the legislature has created an action unheard of at common law, the rights and remedies involved are of the sort traditionally enforced in an action at common law." *United States v. Dudley*, 739 F.2d 175,

179 (4th Cir. 1984). Elaborating the analytical framework for determining whether a Seventh Amendment jury trial attaches to a proceeding created by congressional enactment, the Supreme Court in *Tull v. United States*, 481 U.S. 412, 417-18 (1987), stated:

> First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature.

(Internal citations omitted.) The task of identifying the nearest eighteenth-century analog to a modern statutory cause of action often invites unsatisfying comparisons to distinguishable actions existing at common law in the eighteenth century. Recognizing this, the Supreme Court has stated:

> We need not rest our conclusion on what has been called an "abstruse historical" search for the nearest 18th-century analog. We reiterate our previously expressed view that characterizing the relief sought is "[m]ore important" than finding a precisely analogous common-law cause of action in determining whether the Seventh Amendment guarantees a jury trial.

*Id.* at 421 (citations omitted); *see also Chauffeurs, Teamsters & Helpers Local No. 391 v. Terry*, 494 U.S. 558, 565 (1990) ("The second inquiry" — examining the remedy sought to determine whether it is legal or equitable in nature — "is the more important in our analysis").

In this case, the petitioners filed their petition pursuant to 21 U.S.C. § 853(n), and a § 853(n) petition commences a hearing ancillary to sentencing in an existing criminal action. The criminal proceeding here was the jury trial of the several counts charged in the indictment against Charles McHan, Sr. As in all criminal proceedings where a jury is not waived, a jury acts as the factfinder and makes the determination whether the defendant is criminally liable. In this case, Charles Sr. was convicted by a jury on, or pled guilty to, all of the criminal acts giving rise to the forfeiture. And on the criminal forfeiture count

itself, for which Charles Sr. was entitled to a jury trial, *see* Fed. R. Crim. P. 32.2(b)(4), he waived the right to have a jury make the relevant factual determination of the nexus between the property and the criminal offenses committed, submitting to a bench trial. Once the court at the bench trial determined the relevant facts on the forfeiture count, it proceeded to enter a forfeiture order as part of Charles Sr.'s sentence.* The applicable statute so provides:

> The court, in imposing sentence on such person, shall order, in addition to any other sentence imposed pursuant to this subchapter or subchapter II of this chapter, that the person forfeit to the United States all property described in this subsection.

21 U.S.C. § 853(a); *see also Libretti*, 516 U.S. at 39 (noting that under 21 U.S.C. § 853(a) forfeiture is imposed "in addition to any other *sentence*"). The remaining provisions of § 853 address the process of implementing the sentence of a forfeiture, including its execution. *See also* Fed. R. Crim. P. 32.2.

As relevant to this case, § 853(c) provides that any of the defendant's property that is subject to forfeiture on account of the defendant's conviction of a drug offense cannot escape forfeiture simply because the defendant transfers the forfeited property to a third party:

> All right, title, and interest in property described in subsection (a) of this section vests in the United States upon the commission of the act giving rise to forfeiture under this section. *Any such property that is subsequently transferred* to a person other than the defendant may be the subject of a special verdict of forfeiture and thereafter shall be ordered forfeited to the United States.

21 U.S.C. § 853(c) (emphasis added). That same subsection authorizes a third party wishing to challenge the forfeiture of property transferred to him to file a petition ancillary to the sentencing pro-

---

*In this case, because of the potential claims of third parties to an interest in the property, the court entered a "preliminary" forfeiture order, pending a § 853(n) hearing. *See* Fed. R. Crim. P. 32.2(b)(2).

ceeding to establish, at a hearing, that "he is a bona fide purchaser for value of such property who at the time of purchase was reasonably without cause to believe that the property was subject to forfeiture under this section." *Id.* The procedures governing the third-party challenge to a forfeiture order are contained in § 853(n).

This entire process, however, involves the implementation of the *sentence* of forfeiture. Because sentencing is distinct from the criminal liability phase of trial, any factfinding at sentencing, as well as in proceedings ancillary to sentencing, is conducted by the court, not a jury. *See Libretti*, 516 U.S. at 49 ("Our cases have made abundantly clear that a defendant does not enjoy a constitutional right to a jury determination as to the appropriate sentence to be imposed"); *see also Harris v. United States*, 536 U.S. 545, 549-50 (2002) ("[T]hough [the sentencing] facts may have a substantial impact on the sentence, they are not elements, and are thus not subject to the Constitution's indictment, jury, and proof requirements"). And this is what the statute explicitly provides. *See* 21 U.S.C. § 853(n)(2) ("The hearing [on the third party's petition] shall be held before the court alone, without a jury"). There is simply no jury trial right in criminal sentencings nor, by extension, in proceedings ancillary to criminal sentencings.

Even if the third-party hearing ancillary to the defendant's sentencing proceeding were to be analogized to an independent action, as petitioners have attempted to do, it would be most analogous to an equitable petition to quiet title to the forfeited property for which no jury was traditionally available. Section 853 describes the petition as one to "adjudicate the validity of the [third party's] alleged interest in the [forfeited] property," 21 U.S.C. § 853(n)(2), and the only remedy available is an order to "amend the order of forfeiture" to exclude the third party's interests from the sentence of forfeiture based on a superior property interest, *id.* § 853(n)(6). The statute provides that after the court disposes of the petition to determine the validity of title, "the United States shall have clear title to property that is the subject of the [resulting] order of forfeiture," in this case, the order against Charles Sr. The proceeding at bottom becomes a competition over ownership priority with the court determining the superior title.

Like a § 853(n) proceeding, the purpose of a quiet title action is "to determine which named party has superior claim to a certain piece of

property." *Cadorette v. United States*, 988 F.2d 215, 233 (1st Cir. 1993). And although there are, to be sure, differences between a quiet title action and a § 853(n) proceeding, the relief offered to a complainant in a quiet title action is substantially the same relief offered to a § 853(n) petitioner. *See Tull*, 481 U.S. at 417 (emphasizing that "characterizing the relief sought is '[m]ore important] than finding a precisely analogous common-law cause of action") (internal citation omitted); *see also United States v. Gilbert*, 244 F.3d 888, 911 (11th Cir. 2001) (holding that an ancillary hearing to litigate a third party's interest in property forfeited under the analogous RICO forfeiture statute is "essentially a quiet title proceeding"). And neither action could lead to any compensatory damage award. *See Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 710 (1999) (noting the "'general rule' that monetary relief is legal" and emphasizing the distinction between compensatory legal relief and equitable restitution and other monetary remedies available in equity); *Teamsters*, 494 U.S. at 570 (noting that "[g]enerally, an action for money damages was 'the traditional form of relief offered in the courts of law'") (citation omitted). Rather, claims for the type of relief offered by a quiet title suit have always been equitable actions, brought in the courts of equity rather than courts of law. *See*, *e.g.*, *Arndt v. Griggs*, 134 U.S. 316, 320 (1890) (stating that the proposition that "an action to quiet title is a suit in equity" is "doubtless correct"); *Humble Oil & Refining Co. v. Sun Oil Co.*, 191 F.2d 705, 718 (5th Cir. 1951) ("A suit to quiet title is a purely equitable proceeding, and a federal court is not required to resort to a jury, nor could it do so except for advice, although the cause was carried to the federal court from a state court in a state granting the right to jury trials in such cases"); *Harlan v. Sparks*, 125 F.2d 502, 507 (10th Cir. 1942) (noting that the complainant's suit to quiet title was "essentially one in equity" and concluding, therefore, that the district court "properly denied the demand for trial by jury" under the Seventh Amendment); *see also United States v. Henry*, No. 94-6188, 1995 WL 478635 (6th Cir. Aug. 10, 1995) (unpublished) (holding that a Seventh Amendment right to a jury trial does not attach to an ancillary third-party proceeding under 21 U.S.C. § 853(n)).

The petitioners argue that a third-party hearing under § 853(n) is more analogous to an independent *in rem* civil forfeiture action directed against them, for which a jury trial has been afforded. *See*

*C.J. Hendry Co. v. Moore*, 318 U.S. 133, 153 (1943). But this argument fails on several grounds. *First*, neither the criminal forfeiture action — in this case against Charles Sr. — nor the third-party proceeding to determine the validity of the petitioners' interests under § 853(n) was *in rem*. The criminal proceeding was *in personam* against Charles Sr., and the hearing to determine the validity of the petitioners' property interest was also *in personam. Cf. Cadorette*, 988 F.2d at 223 (noting that an equitable action to quiet title was an *in personam* action).

*Second*, the forfeiture action in this case was not against the petitioners or their property, but against Charles Sr. Because the government concluded that Charles Sr. transferred forfeited property to the petitioners, the order of forfeiture against Charles Sr. was implemented against the transferred property. The government did not seek to forfeit the petitioners' property; it alleged rather that the property in the petitioners' hands belonged to Charles Sr. and was transferred to them after it was forfeited. Therefore, the government contended that it could reach the forfeited property as part of the sentence of forfeiture against Charles Sr. If the petitioners were successful in establishing a cognizable ownership interest in the property under § 853(n)(6), then they could have the property excluded from Charles Sr.'s sentence of forfeiture. But never has the government sought to forfeit property *legally belonging to the petitioners*.

And *third*, still assuming for purposes of the petitioners' argument that the proceeding under § 853(n) is an independent action, we nonetheless cannot ignore that the § 853(n) hearing is ancillary to a sentencing proceeding. And as we have already noted, no jury trial attaches to the predicate sentencing proceeding. *See Libretti*, 516 U.S. at 49.

For all of these reasons, we conclude that a petition filed under 21 U.S.C. § 853(n)(2) ancillary to a forfeiture sentencing proceeding to determine the validity of a petitioner's interest in property does not commence a proceeding for which a jury trial is afforded by the Seventh Amendment.

## VI

Finally, the petitioners challenge several determinations made by the district court about the ownership of property and its inclusion in the order of forfeiture. We address these arguments seriatim.

## A

First, Martha McHan argues that the district court clearly erred when it found that a property agreement executed by her and Charles Sr., dated December 20, 1981 (the "1981 Agreement"), did not establish her entitlement to the forfeited substitute property covered by the 1981 Agreement. She contends that the 1981 Agreement establishes, in satisfaction of § 853(n)(6)(A), that at the time of the commission of the relevant criminal acts, she was a half-owner of the property.

The 1981 Agreement provides in relevant part:

> Any personal property titled in either Charles McHan or Martha McHan shall be deemed to be equally owned by the other regardless of how titled.

> Charles W. McHan and Martha McHan shall have no rights whatsoever to any real or personal property owned or held in trust for Charles W. McHan Jr. or John D. McHan.

> Charles W. McHan and Martha McHan sometimes take[ ] title to property as trustee. Both shall have equal ownership in this type of ownership.

> This contract or agreement shall be binding upon both parties and shall remain in effect unless further agreements and contracts are entered into changing the terms of such.

Based on substantial contextual evidence, the district court found that "the 1981 agreement was likely created by the Defendant [Charles Sr.] in order to avoid forfeiture and long after 1981 (Defendant's testimony *contra* is not credible)." The court also found that because "the record in this particular case . . . is replete with evidence

that Defendant [Charles Sr.] falsified real estate records and transactions [and] engaged in money laundering and bank fraud, . . . the 1981 agreement is entitled to little weight."

The record in this case amply supports the district court's conclusion. The 1981 Agreement was just one of a sea of fraudulent documents uncovered. We find no clear error in the determinations made by the district court's in concluding that Martha failed to prove by a preponderance of the evidence that she had a title or interest in the properties covered by the "1981 Agreement" that was superior to Charles Sr.'s title or interest at the time of his criminal conduct.

B

The petitioners also contend that "property acquired by them both directly and indirectly by way of a series of three agreements, all dated July 1, 1988, between [Charles Sr.] and Martha McHan is not subject to forfeiture pursuant to § 853(n)(6)(B) because they are bona fide purchasers for value of the property and were reasonably without cause to believe that it was subject to forfeiture." The government contends that the record supports that the petitioners did not meet their burden under § 853(n)(6)(B) in two respects: The petitioners failed to show that any transfers of property were for value, and they failed to demonstrate that they were without knowledge of the forfeiture.

The district court found that the petitioners were not "bona fide purchasers for value" because the 1988 agreements, even if authentic, were concededly not arm's-length transactions. The district court also inferred from the evidence that "the 1988 agreements were, in fact, an attempt by the Defendant [Charles Sr.] to avoid forfeiture." It pointed particularly to the suspicious and convenient timing of the agreements:

> Notably, Petitioners only tendered one part of the 1988 Agreements during discovery. The other two parts of the agreement were not disclosed until July 1994. In addition, Petitioners never explained how or why the other two parts of the agreement were not disclosed earlier. The delay in recording the purported assignments is likewise significant.

> [This court has] also found that Martha had little under-
> standing of the agreement, relied exclusively on Defendant
> to value the properties, equitably apportion them, and exe-
> cute all transactions necessary to carry out the terms of the
> agreement. Petitioners' lack of knowledge was also evident
> by their reliance on Defendant during the ancillary proceed-
> ing. In addition, this Court [has] not reject[ed] the Govern-
> ment's argument that both the 1981 and 1988 Agreements
> were "shams."

Addressing the government's argument that the agreements dated July 1, 1988 represented fraudulent transfers, the district court found that "the Government has the better arguments and the better facts."

In the context of all the evidence contained in the record, we cannot conclude that the district court clearly erred in finding that the agreements dated July 1, 1988, were not made at arm's length and that they constituted a deliberate attempt by Charles Sr. to avoid the economic impact of forfeiture.

C

Martha McHan contends that it was clear error for the district court to find that one-half of the accumulated and future rents of a bowling alley (the "Cherokee Lanes") located on property known as "35 Acres" were forfeitable. She contends that claim preclusion and issue preclusion from a previous civil forfeiture action require a conclusion that these rents cannot now be forfeited in this case. She also notes that the preliminary and final orders of forfeiture applied only to accumulated rents, not future rents.

While our review of the parties' arguments and the record below lead us to conclude that the previous civil litigation does not have a preclusive effect on the forfeitability of the *rents* from the bowling alley, we do agree that the preliminary and final orders of forfeiture do not include future rents. In its motion for the forfeiture order, the government sought to forfeit "sums on deposit within the bank account presently held by the United States Customs Service," which included accumulated rents from the Cherokee Lanes. Moreover, the final order of forfeiture included "the Sums on Deposit . . . presently

held by the United States Customs Service, including . . . [a]ll rents derived from the seizure of Cherokee Lanes Bowling Alley, located on the 35-acre property (except for 50% owned by Martha McHan)." Because the government did not request the forfeiture of *future rents* from Cherokee Lanes in its motion for a preliminary order of forfeiture and no future rents were included in the forfeiture order, we conclude that future rents are not covered by the final order of forfeiture. In reaching this conclusion, we clarify any confusion that may have been created by the district court's language in its memorandum opinion referring to the fact that future rents were forfeited.

D

Finally, Martha McHan returns to the terms of the 1981 Agreement to argue that the district court erred in finding that 100% of Charles Sr.'s partnership interest in the Marriott Motel Partnership was forfeitable.

Based on our affirmance of the district court's finding that the 1981 Agreement was "likely created by the Defendant in order to avoid forfeiture and long after 1981," we reject this argument as well.

VII

On its cross-appeal, the government contends that the district court erred in concluding that six Notla deeds of trust and two lots; the Pratt, Teesateskie, and two Raye deeds of trust; and the Weeks deed of trust were not forfeitable.

The record shows that after Charles Sr. was indicted for drug-trafficking offenses in an earlier case, Martha began transferring certain properties owned jointly by her and Charles Sr. to third parties, for which the third parties gave her deeds of trust in return. In September 1989, she transferred the eight Notla properties located in Georgia to third parties in exchange for deeds of trust, although she later reacquired two of the properties through foreclosure. A month earlier, in August 1989, she transferred the Pratt, Teesateskie, and Raye properties to her son, Charles Jr., and received in exchange deeds of trust. And in 1993, she transferred a property to Jan Weeks,

receiving a deed of trust in return. The government sought to forfeit the various deeds of trust and the two properties that were reacquired through foreclosure.

As to each of these assets, the district court held that the government could not forfeit the proceeds of these properties, which had belonged jointly to Martha and Charles Sr., because Martha became a bona fide purchaser for value by *selling* the properties to third parties for value and without the third party's knowledge of the forfeiture. The government takes the position that the district court "allowed Martha to immunize" the deeds of trust from forfeiture by the "simple expedient of trading . . . the forfeitable assets for deeds of trust," thereby thwarting the purposes of the forfeiture statute. We agree.

Martha's conversion of the jointly held properties into deeds of trust only changed the form of Charles Sr.'s interest in the property, not its status as substitute property subject to forfeiture. There is no evidence that Martha herself became a bona fide purchaser for value of Charles Sr.'s interests in the properties by tendering any consideration for the properties. Moreover, the government has not sought to forfeit the properties themselves, since these were purchased in good faith by third parties, but rather only the interests retained by Charles Sr. in the proceeds from the sale of these properties, i.e., his joint ownership in the deeds of trust. *See In re Billman*, 915 F.2d at 921 (holding that a defendant cannot defeat forfeiture by hiding the proceeds of the illegal activity and then transferring substitute assets to a third person).

Accordingly, we reverse the district court's rulings as to these properties and remand to the district court for reconsideration of the forfeiture order as to these properties under 21 U.S.C. § 853(n)(6)(B).

### VIII

For the foregoing reasons, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

*AFFIRMED IN PART, REVERSED*
*IN PART, AND REMANDED*

LUTTIG, Circuit Judge, concurring in part and concurring in the judgment in part:

I concur in full in Parts I, II, III, VI, and VII of the majority opinion. Although I agree with the majority's holdings that "substitute property" in section 853(p) references property of the defendant at the time of the commission of the acts giving rise to forfeiture and that jury trials are not required in proceedings under section 853(n), I do not concur in Parts IV and V of the majority's opinion because I do not subscribe to the reasoning employed by the majority in reaching these holdings.

The majority opinion holds, in Part IV, that "the substitute property that is subject to forfeiture under section 853(p) must be read to include all property of the defendant at the time of the commission of the acts giving rise to the forfeiture." *Ante* at 13. I believe that this is the correct interpretation of section 853(p). However, I believe that it is so for reasons different than those expressed by the majority.

Unlike the majority, I am neither inclined, nor do I see the need, to rest our interpretation of section 853(p) on section 853(o)'s amorphous direction that section 853 should be construed so as to further the section's remedial purpose. Instead, I would rest our interpretation on the comparatively straightforward textual and structural analysis that, were we to hold that substitute property under section 853(p) comprises only that property owned by the defendant at the time of his conviction, section 853 would be irreconcilable with section 853(n)(6), which provides that a third party, who is not a bona fide purchaser, may only prevail in an action for title to substitute property upon a showing that his interest in that property had vested *at the time of the commission of the acts which gave rise to the criminal forfeiture*. *See* 21 U.S.C. § 853(n)(6)(A). In other words, if we were to construe section 853(p) as appellants urge, that section would recognize an entitlement to property that section 853(n)(6) denies. We should not, and I would not, hold Congress to have intended such a textual and structural contradiction absent the most compelling evidence.

In Part V, the majority opinion holds that the right to a jury trial under the Seventh Amendment does not attach to the appellants' third

party petition under section 853(n). Again, I agree with the majority's holding, but not with its analysis.

Under Supreme Court precedent, the question of whether there exists a Seventh Amendment right to have a jury decide a case for which the cause of action is created by statute is answered by first "compar[ing] the statutory action to 18th century actions brought in the courts of England prior to the merger of the courts of law and equity," *Tull* v. *United States*, 481 U.S. 412, 417 (1987), and then "examin[ing] the remedy sought and determin[ing] whether it is legal or equitable in nature." *Id.* at 418.

The principal ground for the majority's rejection of the jury trial right is its conclusion that a section 853(n) proceeding is ancillary to a criminal sentencing hearing, for which the jury trial right does not attach. I understand this characteristic of the section 853(n) proceeding to be immaterial under the Supreme Court's framework to whether a jury trial is required. *See Ross* v. *Bernhard*, 396 U.S. 531, 540 & n.15 (1970) (holding that the derivative nature of the plaintiffs' shareholder suit was not relevant to the question of whether a jury trial attached to their cause of action under the Seventh Amendment and observing that the same is true of a party's status as an intervenor). As that Court explained, "[t]he Seventh Amendment question depends on the nature of the *issue* to be tried rather than the character of the *overall action*." *Id.* at 538 (emphasis added).

The majority holds, alternatively, that the right to a jury trial does not attach because an action under section 853(n) is "most analogous to an equitable petition to quiet title," for which a jury trial is not required, *ante* at 17, and is disanalogous to an *in rem* civil forfeiture action, for which a jury trial is required. Of course, this analysis, unlike that in which it concludes that a section 853(p) proceeding is ancillary to a criminal sentencing proceeding, is properly focused upon the "nature of the issue to be tried," in accordance with the analytical framework erected by the Supreme Court. And as to both conclusions, I am in full agreement. As to the latter, however, I believe that it is correct for reasons different than those recited by the majority.

The majority dismisses appellants' argument that section 853(n) proceedings are analogous to *in rem* civil forfeiture actions (and

therefore require a jury trial) because 853(n) proceedings (1) are *in personam*, not *in rem*, (2) brought against the defendant, not petitioners, and (3) are ancillary to a criminal sentencing proceeding, to which a jury trial does not attach. *See ante* at 17-18. I find none of these bases of distinction to be persuasive, and the majority neither explains nor provides support for the legal relevance of any of them.

I would instead reject appellants' analogy to an *in rem* civil forfeiture action on the grounds that the relevant legal issues in such an action differ dramatically from those in an action under section 853(n). In section 853(n) proceedings, the sole legal issue before the court is the ownership interests of the competing parties, a consideration that is often irrelevant in an *in rem* civil forfeiture action, which turns instead on the culpability of the owner and the role of the property in the prohibited activity. *See Austin* v. *United States*, 509 U.S. 602, 611-18 (detailing the history and nature of civil forfeiture actions).

With these reservations, I agree with the majority that the appellants are not entitled to a jury trial under the Seventh Amendment.