UNITED STATES of America,

v.

Isaac Lee WOODS and Regina
Bailey Woods, Defendants.

No. 5:05–CR–131–IFL(3), 5:05–
CR–131–2FL(3).

United States District Court,
E.D. North Carolina,
Western Division.

May 26, 2006.

James Braxton Craven, III, Durham,
NC, A. Robert Bell, III, Federal Public
Defender, Raleigh, NC, James D.
Williams, The Law Offices of James D.
Williams, Durham, NC, Joseph E. Zeszotarski, Jr., Poyner & Spruill, Raleigh, NC,
Robert J. McAfee, McAfee Law, P.A., New
Bern, NC, for Isaac Lee Woods (1), Defendant.

Clay Wheeler, U.S. Attorney's Office,
Raleigh, for USA, Plaintiff.

ORDER

FLANAGAN, Chief District J.

This matter comes now before the court
on defendants' motion for cancellation of
notices of lis pendens and for return of
seized property. (DE # 88). The government
has responded in opposition (DE
# 89) and defendants filed a reply (DE
# 92). This court heard additional argument
on this motion at the final pre-trial
conference, conducted May 18, 2006.
Upon request of counsel for the government,
supplemental briefing on this matter
was allowed. The government filed its
supplemental memorandum (DE # 107) on
May 19, 2006 and defendants' supplemental
memorandum (DE # 110) was received

on May 22, 2006. In this posture, the issues raised are ripe for decision. For the reasons that follow, defendants' motion is DENIED.

## BACKGROUND

In a multi-count indictment returned May 11, 2005, defendants were charged in "an extensive scheme to create fake mortgages and use these fake mortgages to defraud the government and investors." (Ind.¶ 1). The indictment provided notice that the government will be seeking forfeiture of certain property including, *inter alia,* identifiable substitute property. In memorandum submitted January 12, 2006, the government informed the court that notices of lis pendens had been filed against eleven (11) properties allegedly owned by defendants.[1] All noticed properties are located in Durham County, North Carolina. The government also indicated its intent to place notice of lis pendens on a timeshare property in Hilton Head, South Carolina, and a timeshare property located in Orlando, Florida. At final pre-trial conference on May 18, 2006, the government confirmed that notices of lis pendens have been placed on the two timeshare properties, as well as an additional property located at 1108 Clarendon Drive, Durham, North Carolina,[2] such property not being previously listed in memorandum provided by the government. In their motion, defendants' seek to remove the notices of lis pendens attached to all twelve parcels of real property as well as the two timeshare properties.

## DISCUSSION

In this matter, the government advocates that it is unable to locate property and assets equivalent to the total forfeitable amount in this case of one million dollars ($1,000,000), such amount being set forth in the indictment. Therefore, the government contends that it has attempted to provide notice of its interest in what it deems substitute forfeitable property through the filing of notices of lis pendens on certain real property. Conversely, the defendants contend that under North Carolina law, the government has no potential claim to the noticed property and requests this court cancel the pending notices of lis pendens.

The United States Supreme Court has held that a notice of lis pendens filed in accordance with the law of the state where the noticed property is located is an appropriate means by which the government may preserve its legitimate interest in property. *United States v. James Daniel Good Real Property,* 510 U.S. 43, 58–59, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993). In North Carolina, the guidelines for filing a notice of lis pendens are set forth in sections 1–116 *et seq.* of the General Statutes, which provide in pertinent part that such notice is appropriate in any action affecting title to real property. N.C. Gen. Stat. § 1–116(a)(1) (2005). Similar provisions exist in Florida and South Carolina. *See* Fla. Stat. § 48.23 (2005); S.C.Code. Ann. § 15–11–10 (2005). Therefore, in accordance with controlling state law, in order for notice of lis pendens to be placed on the Durham County properties in North Carolina and the timeshare proper-

1. Seven of these properties are now owned by defendants in their capacity as joint trustees of the Isaac Lee Woods and Regina B. Woods Living Trust. The other four properties are owned by U.F.R., Inc., a company wholly owned by defendants and originally named as a co-defendant; however, the government vol-untarily dismissed U.F.R. as a defendant on January 20, 2006.

2. Defendants claim that this parcel is owned by defendant Isaac Woods' mother, Ella Woods.

ties located in South Carolina and Florida, respectively, the government must show that an action affecting title to real property has been commenced.

■ Criminal forfeiture is among the penalties provided for in cases, like the one at bar, involving wire fraud. Specifically, 18 U.S.C. § 982 provides that a defendant convicted of a crime in violation of those listed in the statute, including wire fraud, must forfeit to the United States certain property including any proceeds of the offense. Additionally, section 982(b) expressly incorporates 21 U.S.C. § 853(p), which expands the set of property subject to forfeiture to include "substitute" as well as tainted property.

Additionally, the Fourth Circuit has held that the government, prior to the entry of judgment, may seek to restrain not only tainted assets, but substitute property as well. *In re Billman*, 915 F.2d 916 (4th Cir.1990). "Such holding includes preserving the defendant's assets for ultimate forfeiture in the event of conviction by thwarting any efforts to avoid the impact of a criminal forfeiture dissipation of those assets, whether substitute or tainted, pre-conviction." *United States v. Wingerter*, 369 F.Supp.2d 799, 807 (E.D.Va.2005). Most notably here, the Fourth Circuit has applied the powerful "relation-back" provision to substitute assets. *United States v. McHan*, 345 F.3d 262, 270–72 (4th Cir. 2003). This "relation-back" principle provides that "all right, title, and interest in [forfeitable] property ... vests in the United States upon the commission of the act giving rise to forfeiture under this section," not at the time that the criminal forfeiture judgment is entered. 21 U.S.C. § 853(c). Although the language of § 853(c) appears limited to tainted assets only, the Fourth Circuit confirmed its ex-

pansion to substitute assets in the *McHan* decision. 345 F.3d at 270 (4th Cir.2003).

■ Therefore, pursuant to controlling law, the government gained an interest in all forfeitable property owned by defendants, including any identifiable substitute property, *at the moment in time that the crimes alleged in the indictment occurred.* Thus, it is no consequence that the substitute property now claimed as subject to forfeiture was acquired by defendants prior to the alleged illegal activity. Nor is it any objection that title to said property was subsequently transferred to persons or entities other than the remaining party defendants.[3] If an innocent third party possesses a superior interest in the property claimed as subject to forfeiture, the appropriate time for that determination to be made is in a post-conviction hearing conducted pursuant to 21 U.S.C. § 853(n). *See also McHan*, 345 F.3d at 268–69. In the time intervening between indictment and judgment, however, the criminal prosecution constitutes an action which could affect title to the real property claimed by the government as subject to forfeiture. Therefore, this court finds that the statutory prerequisites for the filing of notices of lis pendens have been met, and such notices shall not be cancelled on the Durham County, North Carolina, Florida or South Carolina properties.

## CONCLUSION

For the foregoing reasons, defendants' motion to cancel notice of lis pendens (DE # 88) is DENIED. Notices filed on each of the Durham North Carolina, Florida and South Carolina properties shall remain in effect until the conclusion of this action, at which time upon a finding of guilt of the defendants, such property shall become

**3.** For example, the government contends that the seven properties held by the Living Trust were transferred to it in August 2003, well after the acts that form the basis of the indictment began. (U.S. Br. in Opp. to Def's Mot., at 8 n. 2.)

the subject of the government's forfeiture action, or upon a finding of not-guilty such notices of lis pendens shall be promptly removed by the government.