UNITED STATES of America, Plaintiff

v.

David CHRISTIE, a/k/a "Big Man," Defendant.

08 Cr. 1244

United States District Court, S.D. New York.

Signed April 7, 2017

---

JOON H. KIM, Acting U.S. Attorney tor the S.D.N.Y., One St. Andrew's Plaza, New York, NY 10007, By: Jaimie Nawaday Esq., Attorneys for Plaintiff.

LAW OFFICE OF SARAH KUNSTLER, 315 Flatbush Avenue, # 103, Brooklyn, NY 11217, By: Sara Kunstler, Esq., Attorneys for Defendant.

## OPINION

Sweet, D.J.

The United States of America (the "Government") has moved pursuant to Rule 32.2(e) of the Federal Rules of Criminal Procedure and Title 21, United States Code, Section 853(p), to Substitute Assets to include certain property of David Christie, a/k/a "Big Man," ("Christie" or the "Defendant") as substitute assets to be applied towards the forfeiture money judgment that was entered against Christie in the above-captioned case on or about January 19, 2011. Based on the conclusions set forth below, the motion is granted in part and denied in part.

**Prior Proceedings**

On or about May 20, 2009, Christie, among others, was charged in a two-count Superseding Indictment, S1 08 Cr. 1244 (the "Indictment"), with conspiring to distribute and possess with the intent to distribute, a controlled substance, to wit, (1) five kilograms and more of mixtures and substances containing a detectable amount of cocaine and (2) 100 kilograms and more of mixtures and substances containing a detectable amount of marijuana, in violation of Title 21, United States Code, Sections 812, 841(a)(1), 841(b)(1)(A), 841(b)(1)(B), and 846 (Count One) and conspiring to import into the United States from a place outside thereof, a controlled substance, to wit, (1) five kilograms and more of mixtures and substances containing a detectable amount of cocaine from

Jamaica, and (2) 100 kilograms and more of mixtures and substances containing a detectable amount of marijuana from Jamaica, in violation of Title 21, United States Code, Sections 812, 952, 960(b)(1)(B), 960(b)(2)(G), and 963 (Count Two).

The Indictment included a forfeiture allegation seeking, pursuant to Title 21, United States Code, Section 853, any and all property constituting or derived from any proceeds obtained directly or indirectly as a result of the offenses alleged in Counts One and Two of the Indictment and any and all property used or intended to be used in any manner or part to commit and to facilitate the commission of the offenses alleged in Counts One and Two Indictment. On February 1, 2010, a jury in the Southern District of New York found the defendant guilty of the offenses charged in the Indictment. On January 20, 2011, the Defendant was sentenced and ordered to forfeit $3,150,000 in United States currency representing the proceeds obtained as a result of the commission of the offenses charged in Counts One and Two of the Indictment. On or about January 19, 2011, the Court entered an Order of Forfeiture (the "Order of Forfeiture") imposing a $3,150,000.00 money judgment (the "Money Judgment"), which remains unpaid.

Special Agent Ronald J. Hansen of the United States Immigration and Customs Enforcement/Department of Homeland Security ("ICE/DHS") ("Hansen"), has submitted an affidavit stating that he has not been able to locate, obtain or collect assets traceable to the proceeds of the Defendant's offenses to satisfy the outstanding Money Judgement. However, the United States has located the following assets of the Defendant located in Jamaica:

a. The real property, improvements, and appurtenances known and described as Lot 166, located in Catherine Mount, Montego Bay, St. James, Volume/Folio: 1124/847; [1]

b. The real property, improvements, and appurtenances known and described as Lot 450, Section B & D Westgate Hills, Phase 2, St. James Volume/Folio: 1307/202 ("Lot 450") was transferred to Christie for approximately $588,000;

c. The real property, improvements, and appurtenances known and described as Lot 420, located in Hibiscus Drive, Torado Heights, Ironshore, St. James, Volume/Folio: 1060/129 ("Lot 420") was transferred to Christie for approximately $6,400,000; and

d. The real property, improvements, and appurtenances known and described as Lot 1080, located in Ironshore, Taylor Road, Little River, Volume/Folio: 1270/82 ("Lot 1080") was transferred to Christie for approximately $2,700,000;

(a-d collectively, the "Substitute Assets").

The Government is now seeking to forfeit the defendant's interest in the Substitute Assets and to have it, once forfeited, applied as a payment towards the Defendant's outstanding Money Judgment.

The motion of the Government was heard and marked fully submitted on December 1, 2016.

**The Applicable Standard**

Title 21, United States Code, Section 853(p) provides that, if "as a result of any act or omission of the defendant" any property

(A) cannot be located upon the exercise of due diligence;

(B) has been transferred or sold to, or deposited with, a third party;

(C) has been placed beyond the jurisdiction of the court;

(D) has been substantially diminished in value; or

(E) has been commingled with other property which cannot be divided without difficulty

the "court shall order the forfeiture of any other property of the defendant, up to the value of any property" so transferred or moved by the defendant.

Rule 32.2(e)(1) of the Federal Rules of Criminal Procedure further provides that

On the government's motion, the court may at any time enter an order of forfeiture or amend an existing order of forfeiture to include property that:

. . .

(B) is substitute property that qualifies for forfeiture under an applicable statute. Fed. R. Crim. P. 32.2(e)(1).

The court must order the forfeiture of substitute assets to satisfy a money judgment where, as a result of the Defendant's actions or omissions, the Government is unable to locate or obtain the specific proceeds of the defendant's offenses. See *United States v. Alamoudi*, 452 F.3d 310, 314 (4th Cir. 2006) ("Section 853(p) is not discretionary. . . . [w]hen the Government cannot reach the property initially subject to forfeiture, federal law requires a court to substitute assets for the unavailable tainted property").

Persons who claim an interest in the Substitute Assets will have an opportunity to challenge the Government's entitlement

---

1. The Government has conceded that it appears likely that from the property records that Christie no longer has ownership interest in Lot 166, located in Catherine Mount, Montego Bay.

to the Substitute Assets in the ancillary hearing phase of these proceedings. See Title 21, United States Code, Section 853(n) and Fed. R. Crim. P. 32.2(c) and (c)(2)(B). Under Section 853(n) and Rule 32.2(e)(2), the Government must provide notice of its intent to dispose of the property to known interested parties. Persons alleging an interest in the forfeited property then have 30 days, from the date of last publication or actual notice, within which to petition this Court for a hearing to determine the validity of their claims. Title 21, United States Code, Section 853(n)(2). If there are no petitions filed or a petition is denied, a final order will be entered forfeiting the substitute property to the United States. The property will not be disposed of by the Government until all third party claims are resolved by the Court.

■ Forfeiture is not intended to provide a "windfall" to the Government, nor is it a "speculative" determination by the court. See *Pacheco v. Serendensky*, 393 F.3d 348, 355 (2d Cir. 2004) (holding that partial forfeiture of real property was permitted for the purposes of criminal forfeiture because "the alternative could give the government an undeserved windfall."); *United States v. Contorinis*, 692 F.3d 136, 147 (2d Cir. 2012) ("[E]xtending the scope of a forfeiture to include proceeds that have never been acquired either by a defendant or his joint actors would be at odds with the broadly accepted principle that forfeiture is calculated based on a defendant's gains."); *United States v. Dobruna*, 146 F.Supp.3d 458, 460 (E.D.N.Y. 2015) ("The measurement of a defendant's gains—the proceeds subject to disgorgement—is not a speculative event.")

■ Under Rule 32.2, the Government bears the burden of showing that it is entitled to forfeiture on a standard of preponderance of evidence. See *United States v. Roberts*, 660 F.3d 149, 165 (2d Cir. 2011); *United States v. Gaskin*, 364 F.3d 438, 461 (2d Cir. 2004). The Government must also show its entitlement to forfeiture of substitute property on a standard of preponderance of the evidence. See *United States v. Surgent*, No. 04-CR-364 JG SMG, 2009 WL 2525137, at *1 (E.D.N.Y. Aug. 17, 2009); *United States v. Tanner*, 61 F.3d 231, 234 (4th Cir. 1995); *United States v. Poulin*, 690 F.Supp.2d 415, 422 (E.D. Va. 2010), aff'd, 461 Fed. Appx. 272 (4th Cir. 2012).

## The Motion of the Government is Granted in Part and Denied in Part

The Defendant has made five primary arguments to oppose the motion. First, the Government has not shown an act or omission by the defendant authorizing substitute asset forfeiture under the relevant statutes. Second, in regard to one of the several possible alternative prerequisites under the statute, the Government has made an inadequate showing of the requisite due diligence necessary to seek substitute assets. Third, the Government has failed to establish that the substitute property it seeks is less than the amount subject to forfeiture. Fourth, the Government has not shown any attempt to recover the forfeitable proceeds from the defendant's coconspirators. Finally, the forfeiture amount should have been challenged at sentencing.

According to Christie, in his submission to this Court, the Government has not proven by a preponderance of the evidence that Christie has done anything or has failed to do anything that would make the proceeds from the offense unavailable for forfeiture.

### Transfer to a Third Party Has Not Been Established

■ One theory that the Government asserts is that the Defendant must forfeit

substitute assets pursuant to Section 853(p)(1)(B) because the Defendant "transferred or sold to, or deposited with, a third party" drug proceeds. However, the Government has failed to meet its burden by a preponderance of the evidence that Christie transferred drug proceeds to any third party.

The evidence established that for a four-year period from approximately 2004 to 2008, the Defendant worked with several other people to import large quantities of cocaine and marijuana into the United States from Jamaica, and to distribute those drugs in this country. The Defendant, based in Jamaica, ensured that drugs were placed on flights bound for the United States, where they could then be sold in the New York City area and elsewhere. According to the Government, Christie (though his role in the narcotics trafficking) took actions that put crime proceeds in the hands of his co-conspirators.

The Government contends that a defendant causes coconspirators to receive crime proceeds, these actions constitute transfers to third parties arguing that the plain text of Section 853(p)(1)(B) provides that the forfeiture of substitute assets is authorized when forfeitable property, "as a result of any act or omission of the defendant ... has been transferred or sold to, or deposited with, a third party." 21 U.S.C. § 853(p)(1)(B). "[T]he statute does not require proof that the Defendant personally possessed those assets in the first instance ..." *United States v. Dibiase*, 12 Cr. 834 (ER), at *2 (S.D.N.Y. February 16, 2016). Under the statutes, for example, funds could be "transferred ... to" or "deposited with" a third party as a result of a defendant's "omission," a scenario that does include the defendant's having possessed the funds.

Courts in this Circuit have held that where a criminal scheme causes funds to be transferred to a third party in the first instance, instead of to the defendant facing sentence, the Government may pursue substitute assets from the defendant based on the transfer of proceeds to third parties. See *United States v. Seabrook*, No. 10 Cr. 87 (PKC), at 7 (S.D.N.Y. May 26, 2015) (ECF No. 199) ("Here, Seabrook structured a scheme that caused funds to be transferred to co-conspirators in the first instance without passing through his hands.... The Court concludes that this provides a basis for a substitute asset order."); *United States v. Mahaffy*, No. 05 Cr. 613 (JG) (SMG), 2010 WL 5772889, at *5 (E.D.N.Y. Nov. 2, 2010), rev'd *in part on other grounds*, 693 F.3d 113 (2d Cir. 2012) (finding that the Government could forfeit "funds received by defendants' employers and not defendants themselves" because their "criminal acts caused otherwise forfeitable property to be transferred to third parties—their employers").

The Government asks the Court to equate sending narcotics to co-conspirators with transferring narcotics proceeds to third parties for the purposes of § 853 (p), arguing that "[w]here a defendant causes co-conspirators to receive crime proceeds, these actions constitute transfers to third parties." (Gov't Reply, Dkt # 224, pp. 2–3). (If conviction of a laundering, fraud, conspiracy, and solicitation); *United States v. Mahaffy*, No. 05-CR-613, 2006 WL 2224518, at *1 (E.D.N.Y. Aug. 2, 2006) (securities fraud offenses); *United States v. Dibiase*, 12 Cr. 834 (ER), at *2 (S.D.N.Y. Feb. 16, 2016) (money laundering). The court in *Dibiase* took special note that the money laundering offenses at issue there was appropriately considered under § 853(p)(1)(B) because they "by their very nature, entail transfers of funds to third parties *ab initio*." 12 Cr. 834 (ER), at *3. The motion to substitute assets on the ground of third party transfer is denied.

### The Due Diligence of the Government is Sufficient to Permit the Substitution of Assets

██ While the Government failed to meet its burden under Section 853(p)(1)(B), it has met its burden under Section 853(p)(1)(A) because the Government conducted sufficient due diligence to locate Christie's assets to satisfy the forfeiture order. The forfeiture of substitute assets are authorized if the funds cannot be located upon the exercise of due diligence. 21 U.S.C. Section 853(p)(1)(A). The Defendant resided in Jamaica until the time of his arrest, did not regularly travel to the United States, and was not believed to have any bank accounts or other assets in the United States. The Defendant contests none of the facts in the Declaration of Hansen, but has suggested that the Government must do more than state, as Hansen initially did, that he was unable to locate assets to satisfy the money judgment.

However, "The Government generally has little difficulty in making the necessary [due diligence] showing . . ." *United States v. Gordon*, 710 F.3d 1124, 1166–67 (10th Cir. 2013) (quoting *Stefan D. Cassella, Asset Forfeiture Law in the United States* § 22–3, at 643 (2007) (collecting cases)). Under Section 853(p)(1)(A), the Government may satisfy its due diligence requirement through an agent's affidavit explaining the investigation and efforts made to locate the directly forfeitable property. See *United States v. Stathakis*, No. 04-CR-790 (CBA), 2008 WL 413782, at *16 (E.D.N.Y. Feb. 13, 2008) (finding that agent's testimony that he subpoenaed records of defendant's accounts and could not find the forfeitable funds to be sufficient due diligence); see also *Gordon*, 710 F.3d at 1166 (analyst's affidavit explained investigation and averred that property was unavailable for forfeiture because of defen-

dant's acts or omissions); *United States v. Alamoudi*, 452 F.3d 310, 316 (4th Cir. 2006) (government's affidavit recited review of defendant's financial records).

In *Gordon*, the Tenth Circuit upheld a substitute assets order that stated simply, "[d]ue to acts or omissions of [the defendant], additional property directly traceable to the conspiracy . . . is unavailable for forfeiture," and that law enforcement personnel "have been unable to locate, through the exercise of due diligence, any other assets . . . that are traceable to the offenses." *Gordon*, 710 F.3d at 1166. In upholding the order, the Tenth Circuit observed that the defendant provided "no reasonable basis to dispute or otherwise contradict the averments in [the agent's] affidavit that the government exercised due diligence in seeking to locate the directly forfeitable funds at issue and that they were missing due to an act or omission of [the defendant]." *Id.* Moreover, the court observed that the very nature of the large-scale securities fraud conspiracy that the defendant committed entailed that "vast sums of money are easily transferred or hidden" and that "as part of the conspiratorial plan, funds used to purchase stocks were frequently decentralized and concealed." *Id.*

As in *Gordon*, here Hansen, in his Supplemental Declaration, set forth that he searched databases commonly utilized by law enforcement in an effort to locate assets of the Defendant (Supp. Hansen Decl. ¶ 4) and that these searches yielded negative results. *Id.* These attempts to use customary law enforcement techniques and resources to locate the assets of the defendant satisfy the modest showing required by the substitute asset statutes. Accordingly, the requirements under Section 853(p) to seek the forfeiture of substitute assets have been met.

### The Government Need Not Seek Forfeiture from Other Co–Conspirators before Seeking Substitute Assets from Christie

According to Christie, the Government under the provision that "the forfeitable criminal proceeds cannot be located upon the exercise of due diligence" must do more under the circumstances presented here and search for the funds that constitute the drug proceeds by investigating such funds held by the other defendants, including a cooperating witness.

In cases involving narcotics conspiracies, the Second Circuit has interpreted 21 U.S.C. § 853(a)(1) as imposing a "mandatory liability" on the proceeds subject to forfeiture that is joint and several among all conspirators. See *United States v. Roberts*, 660 F.3d 149, 165 (2d Cir. 2011), citing *United States v. Benevento*, 836 F.2d 129, 130 (2d Cir. 1988); *United States v. Contorinis*, 692 F.3d 136, 147 (2d Cir. 2012).

In the context of criminal forfeiture, this means that co-conspirators are responsible for the proceeds that are foreseeable to them. *See United States v. Jackson*, 335 F.3d 170, 181 (2d Cir. 2003); *Contorinis*, 692 F.3d at 147.

As substitute assets are only available to the government under § 853 (p) where the proceeds subject to forfeiture have been placed out of the government's reach, (*United States v. Stathakis*, No. 04-CR-790 (CBA), 2008 WL 413782, at *18 (E.D.N.Y. Feb. 13, 2008)), Christie contends that the government must first show the "acts or omissions" of the co-conspirators have rendered the proceeds unavailable under one of the §§ 853(p)(A)–(E) categories. Without showing which proceeds have been recovered from the other coconspirators or why proceeds that were in the hands of other co-conspirators are no longer available for the purposes of § 853(p), the Government potentially stands to recover an illegal windfall.

In *United States v. Chittenden*, the court denied the government's application for substitute assets where the court observed that the government had failed to show that "the proceeds that went into the pockets of other co-conspirators ... have been dissipated or otherwise disposed of." 96 F.Supp.3d 551, 562 (E.D. Va. 2015).

Here the Court imposed money judgments in varying amounts. For example, Gooden received a money judgment in the amount of $600,000. (Gooden Forfeiture Order, 1:08 Cr. 00371–RWS, Dkt # 29.) This figure approximates the portion that Gooden shared with Eulett. Gooden testified that he and Eulett split 1 kilogram of cocaine for every 5 kilograms that came through Newark. (Tr. 223, 231.) The judgments for McPherson and Eulett, both of whom were held responsible for 150 kilograms of cocaine and 150 pounds of marijuana (McPherson Sentencing Opinion, 1:1–cr–010377–RWS, Dkt # 16, p. 9; Eulett Sentencing Opinion, 1:08 cr–01244–RWS, Dkt# 151, p. 14), contained non-specific forfeiture clauses directing them to forfeit their interest in any property that constituted the proceeds of the offenses, but no forfeiture order was sought by the Government, or ordered by the Court. Co-conspirator Gayle was ordered to forfeit $5,250, 000. (Gayle Forfeiture Order, 1:08–cr–012440–RWS, Dkt # 146, p. 2).

The calculation of Christie's forfeiture order represents the entirety of the proceeds from the conspiracy as it is based on all 150 kilograms of cocaine. The government has not shown any efforts it has made to recover the proceeds from other conspirators or efforts to recover the proceeds from Gooden, its cooperating witness.

However, as noted above, the Hansen supplemental declaration does satisfy the

requirement that the Government conducted the required due diligence to locate the assets connected to this crime. Further as the Defendant concedes, the "Court did not designate 'joint and several liability' in its judgments." At the same time, the Defendant contends, the money judgment amounts across co-conspirators total more than the entirety of the proceeds from the conspiracy. The essence of the Defendant's concern, then, is that the Government's total recovery could exceed the amount authorized by statute. The Government agrees that its total recovery is limited to the full amount of the proceeds.

According to Christie, as the Government has not shown why it cannot first recover any of the forfeitable proceeds available under § 853(A), it is not entitled to an order for the forfeiture of substitute assets. (Memo in Opp. p. 18).

■ However, the statute does not require the Government to show, as a prerequisite to seeking to forfeit substitute assets, that it first attempted to recover forfeitable proceeds from the co-conspirators, nor has any case cited by the Defendant. One case claiming that the Government must first seek to recover forfeitable proceeds was *United States v. Bollin*, which held that "although [he] received only about $30,000, he is liable in a forfeiture judgment for the foreseeable criminal conduct of his co-conspirators." *United States v. Bollin*, 264 F.3d 391, 419 (4th Cir. 2001). Unlike *Bollin*, Christie is only being held responsible for forfeiture of the criminal proceeds for which he was found responsible.

The Government's Motion as to Substitute Assets Exceeding the Money Judgment

Substitute property may be seized to satisfy a judgment for forfeitable property for a qualifying offense, "up to the value" of the forfeitable proceeds. 21 U.S.C. §§ 853(p)(2); See also *In re Rothstein, Rosenfeldt, Adler, P.A.*, 717 F.3d 1205, 1214–15 (11th Cir. 2013) ("The District Court must be mindful that a substitute property interest may be forfeited only "up to the value of" any forfeitable proceeds that have been commingled and are accordingly unavailable for forfeiture as proceeds.")

Cases have authorized "substitute assets" when the Government has shown that the value of the specific property it seeks is less than the amount traceable to the offense. See *United States v. Smith*, 770 F.3d 628, 641–42 (7th Cir. 2014) (Holding that forfeiture as substitute assets was appropriate where "fundamentally, all of Mr. Smith's known unencumbered assets, valued at their original purchase prices, amounted to less than half of the forfeiture judgment amount."); *United States v. Stathakis*, No. 04-CR-790 (CBA), 2008 WL 413782, at *n. 4 (E.D.N.Y. Feb. 13, 2008) ("As the government has represented that the total, best case scenario value of the substitute properties is significantly less than the judgment amount, the Court finds that this property may be substituted to satisfy the judgement against [the defendant].")

In *United States v. Poulin*, 690 F.Supp.2d 415, 431–32 (E.D. Va. 2010), aff'd, 461 Fed.Appx. 272 (4th Cir. 2012), a Virginia district court assessed whether the property the government sought was less than the money judgment prior to granting the order for forfeiture of substitute assets.

Here, the Government has not presented evidence as to the present value of the properties it seeks and therefore has not shown that this amount is less than the $3,150,000 judgment against Christie and

the purchase price of the substitute assets in the 1990s totals $9,688,000.

No cited authorities dealing with the facts presented here have been presented. However, the forfeiture statute provides that its provisions must be given a liberal construction. See 21 U.S.C. § 853(*o*) ("The provisions of this section shall be liberally construed to effectuate its remedial purposes."). The Second Circuit has relied on this rule in interpreting the statute. See *United States v. Awad*, 598 F.3d 76, 79 (2d Cir. 2010) ("The statute at issue in this case instructs that we interpret its terms 'liberally.'" (quoting § 853(0))).

. Under the circumstances presented here, it would be appropriate to deny the motion for failure of the Government to establish that the Substitute Assets do not exceed the Money Judgment and permit the Government to renew its motion after obtaining evidence of present value. Alternatively, the motion could be granted in part as to Lot 1080 which was acquired on information and belief in the 1990's for $2,700,000, an amount less than the Money Judgement of $3,150,000 with a provision requiring the Government to return to Christie any funds recovered in excess of the Money Judgment. In the interests of justice and considering the purposes of the statute, the latter course is adopted, the Government's motion to substitute Lot 1080 as an asset subject to forfeiture is granted, and denied as to the other two lots at issue.

## No Challenge to the Forfeiture Amount is Viable

Christie has submitted a powerful argument that his counsel should have challenged the forfeiture determination at sentencing including conducting a *Fatico* hearing. However, it is presently recognized that given the procedural history of this case, there is no avenue available to raise a *Strickland* argument or to challenge the forfeiture determination.

## Conclusion

The motion of the Government to substitute Lot 1080 as an asset subject to forfeiture is granted on the condition that any funds in excess of the Money Judgment be returned to Christie.

It is so ordered.